Ethan J. Brown
 ethan@bnsklaw.com
Amjad M. Khan
 amjad@bnsklaw.com
**BROWN, NERI, SMITH & KHAN LLP**
11601 Wilshire Blvd., Suite 2080
Los Angeles, CA 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980

Jennifer L. Gordon
 jgordon@loriumlaw.com
**LORIUM LAW**
180 N. LaSalle St., Suite 3700
Chicago, Illinois 60601
Telephone: (312)564-5757
Facsimile: (312)564-5758
*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LifeVoxel Virginia SPV, LLC, a Virginia Limited Liability Company; Scott Marschall, an individual; Debbie Gallo, an individual; Kevin Sinagra, an individual; and Scott Poole, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> LifeVoxel.AI, Inc., a Delaware corporation; Kovey Kovalan, an individual; Linh Le, an individual, <br><br> Defendants. | No. **'22 CV 0566 BEN JLB** <br><br> COMPLAINT FOR: <br> 1. **VIOLATION OF SECTION 12(a)(1) OF THE SECURITIES EXCHANGE ACT** <br> 2. **VIOLATION OF SECTION 10 OF THE SECURITIES EXCHANGE ACT** <br> 3. **VIOLATION OF SECTION 20 OF THE SECURITIES EXCHANGE ACT** <br> 4. **VIOLATIONS OF THE VIRGINIA SECURITIES ACT (Va. Code. Ann. § 13.1-522)** <br> 5. **VIOLATIONS OF THE VIRGINIA SECURITIES ACT (Va. Code. Ann. § 13.1-522(C))** <br> 6. **COMMON LAW FRAUD** <br> 7. **CIVIL CONSPIRACY** <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT

NOW COME the Plaintiffs, by and through counsel for their Complaint against Defendants, LifeVoxel.AI, Inc. ("LifeVoxel"), Kovey Kovalan ("Kovey"), and Linh Le ("Linh"), collectively "Defendants," and in support thereof, state as follows:

### I.   NATURE OF THE ACTION

1.   This is an action against individuals Kovey and Linh and their business entity, LifeVoxel, for committing federal securities fraud in violation of Section 10(b) of the 1934 Securities Exchange Act and SEC Rule 10b-5, among other violations.

2.   Kovey and Linh, as equity owners and officers of each of the aforementioned business entities, fraudulently induced Plaintiffs to allegedly invest in and advance funds to Defendant LifeVoxel by means of myriad misrepresentations of information and active concealment of information regarding LifeVoxel's financial condition and intent for invested capital to induce Plaintiffs to invest over $3.5 million in LifeVoxel (and over $5M including all the investors that invested under the same pretense) via Simple Agreements for Future Equity (the "SAFE Notes") issued by LifeVoxel.  Kovey and Linh initially portrayed the SAFE Notes as a way for Plaintiffs to obtain equity in LifeVoxel and turn the approximately $3.5 million Plaintiffs invested into significant profit in a relatively short time span.

3.  In reality, however, the SAFE Notes were the means for Kovey and Linh to use LifeVoxel to solicit funds from Plaintiffs, and use those funds to move money through their business entities Voxcell Cloud, LLC ("Voxcell Cloud") and AI Visualize, Inc. ("AI Visualize") to finance their personal lives and push out minority investors.

4.  Unbeknownst to Plaintiffs at the time of their investment, Kovey and Linh had utilized this strategy several times over the past ten years with the Kovey Patents (see Para. 31) -- starting companies, soliciting investor funds, using those funds to finance their personal lives, and abandoning the business for the next new "startup" entity.

5.  Kovey and Linh's intent to defraud Plaintiffs is evident from their reluctance to commit any of their personal funds in LifeVoxel, their misrepresentations regarding the purpose and scope of funds raised via the SAFE Notes, and their failure to disclose material information to Plaintiffs.

6.  The misconduct described herein entitles Plaintiffs to rescission of their investment with attendant costs, fees and other expenses, including fees and expenses for enforcing their rights. Indeed, although LifeVoxel participates in a relatively new industry of electronic health information collection and transmission, and SAFE Notes are a relatively new and novel security, Defendants still committed standard securities fraud.

### *History and Utilization of SAFE Agreements/Notes*

7.  SAFE agreements or notes are intended to be simplified vehicles by which investors can contribute capital to a business entity in exchange for the ability to purchase shares of the company at a discounted rate upon a liquidity event.

8.  SAFEs are a relatively new type of security under which, depending on the terms of the individual instrument, an investor's cash generally converts to equity in the issuing company under conditions specified in the SAFE. They are often used to provide a company with bridge financing until it can complete an additional capital raise or a sale of the company, and will often convert to equity upon the occurrence of that future specified event.

9.  Historically, startup entities would acquire capital by either selling equity or financing their operations with debt in the form of convertible notes.

10. Convertible notes provide investors with interest payment on their investment until said investment is repaid in full or the note reaches its maturity date.

11. Both SAFE notes and convertible notes are classed as securities by the United States Securities and Exchange Commission.[1]

12. SAFE notes, while still convertible *securities*, are distinguishable from convertible *notes* in that they are not debt, and thus do not accrue interest or have a specified maturity date.

---

[1] *See* https://www.sec.gov/oiea/investor-alerts-and-bulletins/ib_safes

13. A SAFE note essentially acts as a contractual promise to allow an investor to purchase a specified number of shares for an agreed price at some point in the future.

14. SAFE notes allow a company to postpone its valuation until a later date to avoid the need to assign the company a value at such an early stage in its development.

15. SAFE notes further allow a company to utilize exemptions under the Securities Exchange Act of 1933 to solicit and secure capital by the sale of securities without having to register with the Securities and Exchange Commission ("SEC"), provided certain procedures are followed.

## II.  **PARTIES**

16. Plaintiff LifeVoxel Virginia SPV LLC is a limited liability company organized and existing under the laws of the State of Wyoming.

17. Plaintiff Scott Marschall is an individual and resident of the State of Virginia.

18. Plaintiff Debbie Gallo is an individual and resident of the State of Virginia.

19. Plaintiff Kevin Sinagra is an individual and resident of the State of Virginia.

20. Plaintiff Scott Poole is an individual and resident of the State of Virginia.

21. Defendant LifeVoxel is a corporation organized under the laws of the State of Delaware having its principal place of business at 263 Tresser Boulevard, 9th Floor, Stamford, Connecticut 06901.

22. Non-party Voxcell Cloud is a limited liability company organized under the laws of the State of Connecticut having its principal place of business at 11689 Sorrento Valley Road, Suite Q, San Diego, California 92121.

23. Non-party AI Visualize is a corporation organized under the laws of the State of Texas having its principal place of business at 101 E. Park Boulevard, Suite 600, Plano, Texas 75074 and the majority shareholder of LifeVoxel.

24. Non-party Kovey, LLC is a limited liability company organized under the laws of the State of Connecticut having its principal place of business at 1595 Black Rock Turnpike, Fairfield, Connecticut 06825, owned by Defendants Kovey and Linh and the majority shareholder of Defendant AI Visualize.

25. Defendant Kovey is an individual and resident of San Diego, California. Kovey is a founder, equity owner and Chief Executive Officer of LifeVoxel. He is a founder, equity owner and director of Voxcell Cloud. He is a founder, equity owner and director of Kovey, LLC. He is a founder and director of AI Visualize.

26. Defendant Linh is an individual and resident of San Diego, California, and she is also Kovey's spouse. Linh is a founder, equity owner and the Director of Finance of LifeVoxel. She is a founder, equity owner and director of Voxcell Cloud. She is a founder and director of AI Visualize.

### III. <u>JURISDICTION AND VENUE</u>

27. This Court has subject matter jurisdiction over this action pursuant to Section 27 of the Securities Exchange Act (the "Act") 15 U.S.C. § 78aa and 28 U.S.C. § 1331 because Plaintiffs are asserting a claim under the Act.

28. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

29. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because at least one Defendant is a resident of this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

30. This Court has personal jurisdiction over Defendants because Defendants Kovey and Linh reside in California, and on information and belief, Defendants regularly conduct business in the State of California because they transacted business relating to the causes of action alleged herein within the State of California, and/or committed tortious acts in the State of California, and/or committed tortious acts causing injury to persons or property in the State of California.

### IV. <u>FACTUAL ALLEGATIONS</u>

#### *The Intellectual Property and Business Entity History*

31. Kovey has spent approximately twenty years in the technology field, and during the course of his career, has been granted a dozen patents by the United States Patent and Trademark Office. Several of these patents are in the field of or related to technology for the centralization and transmission of medical imagery and

other information to streamline and decrease costs related to access to patient medical records (the "Kovey Patents").

32. Through their convoluted business history, Kovey and his wife, Linh, have formed multitudes of businesses, changed business names, changed ownerships, operated under assumed business names, and facilitated transactions among the business entities and themselves that did not maintain arms-length.

33. Furthermore, and unbeknownst to Plaintiffs, Kovey had changed his name from "Kovalan Muninady" to "Kovey Kovalan" following the bankruptcy of one of his business entities. Plaintiffs were unable to discover Kovey's prior business failures since his "new" name would not be associated with those public court records.

34. Kovey and Linh had unsuccessfully attempted to monetize the Kovey Patents for years through various business entities that they formed and controlled, including Kovey, LLC d/b/a JAYA 3D, LLC d/b/a AIV Founders, LLC[2] d/b/a KJAYA, LLC, KJAY Holdings Limited Ireland, KJAY Medical, LLC, at least two foreign entities – one in India and one in Germany, and the entities named as Defendants herein. Several of the aforementioned business entities have ceased

---

[2] This entity was listed in federal tax documents as the owner of AI Visualize, despite Kovey, LLC being the equity owner listed on all foundation documents. This entity possesses the same Federal Employer Identification Number as KJAY, LLC, which had filed for bankruptcy, and is doing business as an entity called "G&A Investments, Inc."

operations, but they have transferred assets and liabilities among them to avoid creditors and taxing authorities.

35. Kovey and Linh used the Kovey Patents to solicit investors for each of the aforementioned business entities.

36. Kovey and Linh organized Voxcell Cloud in the State of Connecticut on or about June 25, 2007.

37. AI Visualize was incorporated in the State of Texas on or about May 23, 2016 by Kovey, with Kovey and Linh being the initial directors and owners.

38. Several of the Kovey Patents were assigned to AI Visualize thereafter.

39. AI Visualize amended and restated its articles of incorporation on or about February 16, 2021 listing three shareholders: Kovey, LLC, holding an 84.67% ownership stake, and two other third party investors.

40. On information and belief, Kovey, LLC conducts no business and is wholly owned by Kovey and Linh.

41. Voxcell Cloud then became a wholly owned subsidiary of AI Visualize.

42. On information and belief, Kovey and Linh, via their *alter ego* Kovey, LLC, used the equity capital from AI Visualize to purchase Voxcell Cloud from themselves.

43. On or about August 5, 2019, Voxcell Cloud filed an application with the City of Stamford, Connecticut to operate under the assumed business name of "LifeVoxel.AI", and the application was approved.

44. AI Visualize licensed the Kovey Patents to Voxcell Cloud, and Voxcell Cloud then entered into contractual relationships with third parties for the performance of services covered by the Kovey Patents.

45. Voxcell Cloud conducted some business, namely providing technology services to the medical industry, with moderate success. Kovey and Linh frequently paid for their personal expenses such as their home rental payments and personal luxury vehicle lease, gym memberships, personal training (with two separate trainers), car insurance payments among other daily incidental expenditures with funds from Voxcell Cloud but deliberately misclassified such payments as business expenses.

46. LifeVoxel was incorporated in the State of Delaware on or about November 12, 2019 as a wholly owned subsidiary of AI Visualize. A copy of LifeVoxel's Certificate of Incorporation is attached hereto as Exhibit A.

47. LifeVoxel's incorporation documents authorize the issuance of 1,000,000 shares.

48. LifeVoxel was a shell company that conducted no discernable business activity prior to 2021.

49. During the first several years of operations and despite countless attempts to raise capital, Kovey and Linh were only able to secure approximately $500,000 in capital raises via the sale of equity in AI Visualize.

### *The Entity Restructuring*

50. In late July 2021, Kovey was introduced to Mr. Sekhar Puli, an experienced entrepreneur and investor with a proven track record of investment success and achievement.

51. Mr. Puli has assisted multiple companies in securing capital investments and eventual buy-outs, has sat on the board of many companies, and has run a successful not-for-profit entity for the past twenty years.

52. Mr. Puli has an extensive network of high-net-worth individuals, which Kovey and Linh desired to access for their aforementioned business entities.

53. After discussing Kovey's failure to raise capital and get his business off the ground, Mr. Puli offered his assistance to Kovey, initially in the form of advice and mentorship to help take the Kovey Patents technology global, particularly to third-world countries where the medical technology would quite literally be life-saving.

54. Kovey incessantly asked Mr. Puli to take a formal role with LifeVoxel and AI Visualize, knowing that Mr. Puli's involvement would lend credibility to the business entities for purposes of raising capital.

55. After many follow up conversations regarding the potential of the Kovey Patents and the structure of the business entities, Mr. Puli agreed to assist Kovey in achieving success for his businesses on the conditions that Mr. Puli be given positions within AI Visualize and LifeVoxel whereby he could monitor the finances of each of these companies and perform audits in conjunction therewith.

56. To accommodate Mr. Puli's requirements for assistance with his businesses, Kovey offered Mr. Puli an employment position as Co-Founder, President and Chief Executive Officer of AI Visualize, as well as a position as Chief Executive Officer and President of LifeVoxel.

57. Upon the commencement of Mr. Puli's employment at AI Visualize and board position with LifeVoxel as of September 1, 2021, Kovey, Mr. Puli and other advisors reviewed the Kovey Patents, the ownership structure of AI Visualize, Voxcell Cloud, and LifeVoxel, and the businesses of each, if any.

58. After said review, the owners and directors of AI Visualize determined that the course of action ("Action Plan") that was most likely to result in profitability and achievement of an eventual liquidity event for investors was to:

   a.   separate the shell entity, LifeVoxel, from being used as Voxcell Cloud's assumed business name;

   b.   assign the client contracts and business activity from Voxcell Cloud to LifeVoxel;

   c.   have AI Visualize retain ownership of the Kovey Patents and license to LifeVoxel for business operations

   d.   work out a share buyback arrangement as between AI Visualize and its then-current shareholders using a loan from LifeVoxel; and

   e.   arrange a capital raise for LifeVoxel.

59. The Action Plan was to be completed in conjunction with Mr. Puli assuming formal roles with LifeVoxel and AI Visualize.

60. After the Action Plan was to be completed, Voxcell Cloud was to cease operations and be wound up, with all business thereafter to be completed by LifeVoxel.

61. The Action Plan was to be back-dated to August 1, 2021, after which the structure of the business entities was to be as depicted in the following chart:



62. Kovey and Linh, as directors of Kovey, LLC, the majority shareholder of AI Visualize, executed a corporation resolution back-dated to August 1, 2021 to

approve this restructuring (the "Restructuring Resolution"). A copy of the Restructuring Resolution is attached hereto as Exhibit B.

63. The Restructuring Resolution also vested ownership interest of AI Visualize in its "promoters" without defining who "promoters" were.

64. Despite the Action Plan being understood and agreed as among Mr. Puli, Kovey, and Linh, Kovey and Linh did not transfer all of the assets of Voxcell Cloud to LifeVoxel.  In fact, despite LifeVoxel assuming all customer contracts and performing the services thereunder, Kovey and Linh concealed that Voxcell Cloud was still sending the invoices for work and collecting funds that were due to LifeVoxel.

### *Defendants Sought Funding from Plaintiffs Through Misrepresentations and Omissions*

65. Through the relationships among Kovey, Linh, Voxcell Cloud, AI Visualize and LifeVoxel, Kovey and Linh devised a scheme to raise capital for LifeVoxel under false pretenses, use that capital to improperly "pay off" prior investors in the parent company AI Visualize, and use that capital to operate LifeVoxel while diverting revenue from LifeVoxel to Voxcell Cloud.

66. The revenue due to LifeVoxel for services rendered was instead invoiced by Kovey and Linh from Voxcell Cloud for the dual purposes of funding Kovey and Linh's luxury lifestyle and hindering LifeVoxel's ability to achieve a conversion event for Plaintiffs.

67. For the capital raise, LifeVoxel solicited Plaintiffs for funds, all of whom were in Mr. Puli's extended social and familial network.

68. LifeVoxel opted to offer Plaintiffs an investment opportunity via SAFE Notes, rather than more "traditional" means such as outright share/membership unit purchases, or convertible notes.

69. In the course of soliciting capital from Plaintiffs, LifeVoxel presented Plaintiffs with SAFE Notes in the form attached as Exhibit C hereto.

70. Plaintiffs began discussing the SAFE Notes investments with Defendants in earnest during the first week of September 2021. Between then and October 21, 2021, when the Plaintiffs funded their SAFE Notes, Defendants LifeVoxel and Kovey offered a litany of false and misleading statements and omissions concerning matters critical to the SAFE Notes investments and LifeVoxel's finances, and failed to disclose information material to the Plaintiffs' decision to invest. Each of these was made intentionally to induce Plaintiffs to supply LifeVoxel (and unknowingly, AI Visualize and Voxcell Cloud) with critically-needed capital against a false picture of LifeVoxel's financial condition and contrary to federal and state anti-fraud securities laws, as well as common-law fraud principles.

71. On September 10th, 2021, Kovey met with Plaintiff LifeVoxel Virginia SPV, LLC in Virginia. During this meeting, Kovey explained that LifeVoxel was looking to raise capital for the purposes of building the company and scaling this technology to greater heights with the help and support of Mr. Puli. Kovey did not

disclose that the SAFE Note funds would be used to buy back shares of AI Visualize from those investors.

72. On or about September 12, 2021, LifeVoxel, at Kovey's direction, emailed Plaintiff LifeVoxel Virginia SPV, LLC a presentation created with information provided by Kovey regarding the LifeVoxel technology and plan, as well as the past three years of LifeVoxel financial statements (the "LifeVoxel Presentation").

73. On or about September 12, 2021, LifeVoxel, at Kovey's direction, emailed Plaintiff Scott Marschall the LifeVoxel Presentation.

74. On or about September 12, 2021, LifeVoxel, at Kovey's direction, emailed Plaintiff Debbie Gallo the LifeVoxel Presentation.

75. On or about September 12, 2021, LifeVoxel, at Kovey's direction, emailed Plaintiff Kevin Sinagra the LifeVoxel Presentation.

76. On or about September 12, 2021, LifeVoxel, at Kovey's direction, emailed Plaintiff Scott Poole the LifeVoxel Presentation.

77. The LifeVoxel Presentation showed financial statements allegedly from LifeVoxel and that LifeVoxel had increasing revenue for the prior three years. These financials and revenue statements were completely fabricated by Kovey, as LifeVoxel was a shell company which had conducted no business.

78. As part of the SAFE Notes, the LifeVoxel "cap table"[3] was presented to Plaintiffs showing that AI Visualize was 100% owner of all equity in LifeVoxel. A copy of the cap table is included with the SAFE Note in Exhibit D herein.

79. On or about September 12, 2021, LifeVoxel, at Kovey's direction, emailed Plaintiff Scott Marschall the SAFE Note containing the cap table.

80.  On or about September 12, 2021, LifeVoxel, at Kovey's direction, emailed Plaintiff Debbie Gallo the SAFE Note containing the cap table.

81. On or about September 12, 2021, LifeVoxel, at Kovey's direction, emailed Plaintiff Kevin Sinagra the SAFE Note containing the cap table.

82. On or about September 12, 2021, LifeVoxel, at Kovey's direction, emailed Plaintiff Scott Poole the SAFE Note containing the cap table.

83. At the time it was presented to Plaintiffs, the SAFE Note contained material misrepresentations in that LifeVoxel was not in good standing under the laws of the State of Delaware and had not filed an annual report since March 2020. As of the date of this filing, LifeVoxel is still not in good standing and has not filed the annual report required by Delaware law according to the website of the Delaware Secretary of State.

84. At the time it was presented to Plaintiffs, the SAFE Note contained material misrepresentations in that LifeVoxel was indeed in violation of its certificate of

---

[3] "Cap table" (short for "capitalization table") is a table that shows the equity capitalization for a company.

incorporation and bylaws, was in violation of Title 8, Chapter 5 of the Delaware Code (8 DE Code § 510 (2018)), and owed a material debt to the State of Delaware in the amount of at least $170,165. As of the date of this filing and according to the website of the Delaware Secretary of State, LifeVoxel has still not satisfied its outstanding tax obligations to the State of Delaware. See Exhibit E.

85. On information and belief, Kovey altered the number of authorized shares in AI Visualize without following proper procedure in order to avoid Delaware corporate taxes.

86. The LifeVoxel cap table as presented to Plaintiffs was false, as it neglected to include UKSA, LLC, an unrelated third party, as an equity owner of LifeVoxel.

87. Because LifeVoxel did not disclose that it would be using SAFE Note proceeds to give to AI Visualize to "payoff" AI Visualize investors, these statements concerning the use of the SAFE proceeds were false and misleading, unbeknownst to Plaintiffs.

88. Each of the Plaintiffs invested money with LifeVoxel via the SAFE Notes based on the representations of LifeVoxel and Kovey and the representations contained within the SAFE Notes.

### *Discovery of Unethical Conduct*

89. Kovey and Linh consistently failed to sign documents necessary for the proper record keeping and functioning of LifeVoxel and AI Visualize, despite consistent reminders from Mr. Puli.

90. In September 2021, Kovey made a verbal promise to at least one third party independent contractor of LifeVoxel to give him equity in LifeVoxel in exchange for sweat equity. This was never memorialized in any documents but was done "off the books." This grant of equity was not disclosed in the LifeVoxel cap table presented to Plaintiffs.

91. Kovey and Linh further paid Linh, and their friends, exorbitant salaries for either "part time" work or less than part time work allegedly performed for LifeVoxel.

92. In her role as Director of Finance for LifeVoxel, Linh was responsible for ensuring that all customer accounts belonging to Voxcell Cloud, LLC were to be assigned and revenue be sent to LifeVoxel.

93. Linh intentionally failed to assign all of the Voxcell Cloud contracts to LifeVoxel.

94. Kovey intentionally failed to assign all of the Voxcell Cloud contracts to LifeVoxel.

95. Moreover, Linh knowingly continued to invoice clients from Voxcell Cloud for work performed by LifeVoxel, and wrongfully collected the revenue in Voxcell Cloud that was meant for LifeVoxel.

96. In mid-November 2021 and after relentless requests and pleadings for Kovey and Linh to follow corporate formalities, proper accounting principles,

securities laws and ethical obligations, Mr. Puli finally lost his patience with Kovey and Linh and realized the fraud they were perpetrating on Plaintiffs.

97. At that time, Mr. Puli demanded that Kovey and Linh rectify their misappropriations and other unethical behavior, operate transparently and in compliance with financial requirements, and honor their obligations to Plaintiffs in proper operation and management of LifeVoxel.

98. Kovey then expressed his desire to part ways with Mr. Puli to avoid any further scrutiny or investigation from Mr. Puli.

99. Mr. Puli felt obligated to protect the interests of Plaintiffs and offered to tender his resignation from LifeVoxel and AI Visualize on the condition that Kovey arrange for all SAFE Note funds to be returned to Plaintiffs, essentially unwinding the involvement of Mr. Puli and Plaintiffs and returning all relationships to the status quo as it existed in August 2021.  Kovey agreed to this offer on or about November 27, 2021 in an email with Mr. Puli. A copy of this email is attached as Exhibit F.

100. To memorialize that conversation, Mr. Puli sent an email to Kovey stating that he was tendering his conditional resignation, contingent upon a set of actions to be taken by Kovey and LifeVoxel, including returning funds to the Plaintiffs.

101. Despite previously agreeing to this offer from Mr. Puli, Kovey and Linh instead took the following actions:

a.  Sending Mr. Puli a letter of termination "acknowledging his resignation" without referencing any of the agreed-upon conditions precedent;

b.  Removing any references to Mr. Puli from the LifeVoxel website;

c.  Blocking Mr. Puli's access to email, and shared drives;

d.  Blocking Mr. Puli's access to view any of the bank accounts or credit card statements for LifeVoxel, despite LifeVoxel's credit cards being opened under Mr. Puli's social security information; and

e.  Threatening Mr. Puli with lawsuits for alleged violations of confidentiality obligations if he discussed the fraudulent activity with third parties.

102. In November, 2021, Kovey and Linh moved funds invested in LifeVoxel by Plaintiffs via the SAFE Notes into AI Visualize and then used those funds to repurchase shares of AI Visualize back from the minority shareholders, leaving Kovey, LLC as the sole shareholder.

103. The implications of this are especially troublesome, since the practice of raising funds under false pretenses and then using those new investor funds to pay prior investors is the essence of a Ponzi scheme.  It is therefore particularly important that Plaintiffs take discovery from Defendants to determine the full scale of the underlying scheme, as well as to be able to inform other investors (and

potentially relevant authorities) so that all parties involved have the best chance to recover the funds they provided to LifeVoxel.

104. In mid-November 2021, Mr. Puli confirmed that Linh had still failed to move revenue received by Voxcell Cloud to LifeVoxel as previously agreed. This diversion of income into Voxcell Cloud meant that LifeVoxel was collecting only 80% of the revenue due to it, which significantly impacted LifeVoxel's target revenue on its runway to a liquidity event. This made it less likely that LifeVoxel would attract new investors or otherwise reach a liquidity event that would cause Plaintiffs' SAFE Notes to convert into equity.

105. Once Mr. Puli discovered the fraudulent conduct and true intent on the part of Kovey, Linh and LifeVoxel and confronted them about it, he was summarily and immediately terminated, completely removing the only oversight of the LifeVoxel funds and nullifying a material reason for Plaintiffs' having invested in the SAFE Notes to begin with.

106. Thereafter, Plaintiffs discovered that Kovey and Linh had, prior to Plaintiffs' investments, registered entities called "LifeVoxel" in Germany and India and were transferring funds from LifeVoxel to those foreign entities for their own personal use.

107. Plaintiffs further discovered that Kovey and Linh had been transferring funds from LifeVoxel to companies in Russia and India for services and disclosing confidential LifeVoxel intellectual property to these companies with no exclusivity,

confidentiality, or other agreement in place to preserve the security of said intellectual property and prevent these companies from utilizing LifeVoxel's intellectual property.

108. Plaintiffs further discovered that Kovey and Linh had been transferring funds from LifeVoxel to other persons and entities via PayPal and/or under the classification of "personal loans" in order to fraudulently avoid IRS scrutiny and tax liability.

### *Justifiable Reliance*

109. The Plaintiffs believed and relied upon the false and misleading representations described above when entering into the SAFE Notes. But for the misrepresentations and omissions committed by Defendants LifeVoxel, Kovey, and Linh concerning LifeVoxel's fraudulent financials, revenue stream, and cap table, and the intended use of the SAFE Note proceeds, the Plaintiffs would not have agreed to enter into the SAFE Notes.

110. The Plaintiffs justifiably relied on these misrepresentations and omissions about LifeVoxel and the SAFE Notes. As the founders and officers of LifeVoxel, AI Visualize and Voxcell Cloud, Kovey and Linh were uniquely situated to know and understand the full picture of the finances and prospects of the three entities, as well as what they had been able to raise prior to Plaintiffs, and how the entities would use the proceeds invested in LifeVoxel. Nonetheless, Kovey, Linh, and LifeVoxel deliberately made the misrepresentations and omissions detailed above. The

Plaintiffs, by contrast, were not in a position to know the non-public, undisclosed information about AI Visualize, LifeVoxel and Voxcell Cloud and their obligations, including existing, undisclosed shareholders and agreements for equity.

### *Summary of Scienter Allegations*

111.  It is clear from the foregoing allegations that LifeVoxel, Kovey and Linh made numerous misrepresentations and omissions about LifeVoxel and the SAFE Notes, while in possession of undisclosed facts that were contrary to their representations, or necessary to make their representations complete and not misleading. LifeVoxel, Kovey and Linh therefore made these alleged misstatements knowingly and intentionally to induce the Plaintiffs to provide investment funds for the SAFE Notes, and intended that Plaintiffs rely on them.

112.  Kovey and Linh in particular had both motive and opportunity to deceive the Plaintiffs. As officers and equity owners of LifeVoxel, AI Visualize, and Voxcell Cloud, they stood to gain from successfully raising millions of dollars with the SAFE Notes, particularly because the SAFE Notes required no expenditure in interest or repaid principal on the part of LifeVoxel. Further, Kovey in particular stood to gain because through each of the steps in the scheme, he benefitted. He benefitted directly from spending LifeVoxel funds on personal expenses, diverting funds from LifeVoxel to his *alter ego* company Voxcell Cloud, and using LifeVoxel funds to buy out shareholders of AI Visualize to increase the ownership interest he had in it via another *alter ego* company, Kovey, LLC.

113.  Linh and Kovey further conspired to use Mr. Puli's credibility and renowned success with startup entities to raise capital under false pretenses, and then terminate Mr. Puli once the capital was in hand and before he was able to ascertain the full extent of their fraudulent conduct.

### *Loss Causation*

114.  The Plaintiffs have been deprived of, and lost, at least $3.5 million in connection with the SAFE Notes. In particular, Kovey's, Linh's and LifeVoxel's misrepresentations and omissions caused the Plaintiffs to commit $3.5 million to the SAFE Notes, which they would not have committed had Plaintiffs known the truth that was revealed shortly afterward.

115.  Furthermore, it was Kovey's, Linh's, and LifeVoxel's misrepresentations and omissions that caused Plaintiffs' losses, as absent those misrepresentations and omissions, Plaintiffs would still be in possession of the $3.5 million of which they were deprived.

### V.    <u>CAUSES OF ACTION</u>

### <u>Count I – For Violations of Section 12(a)(1) of the Securities Exchange Act of 1934 and Section 5 of the Act</u>
**(Against LifeVoxel, Kovey and Linh)**

116. Plaintiffs repeat and reallege paragraphs 1 through 115 as paragraph 116 of this Complaint as though fully set forth herein.

117.  Plaintiffs bring this cause of action against LifeVoxel, Kovey and Linh for violation of Section 12(a)(1) of the Act, 15 U.S.C. §77l(a)(1) for the sale of unregistered securities in violation of Section 5 of the Act.

118.  LifeVoxel, Kovey and Linh, by engaging in the conduct described above, directly or indirectly, sold the SAFE Notes to Plaintiffs.

119.  The SAFE Notes were and are unregistered securities.

120.  No registration statement has been filed with the Securities Exchange Commission or has been in effect with respect to the SAFE Notes.

WHEREFORE, Plaintiffs pray for an award in favor of Plaintiffs against Defendants, jointly and severally, in an amount to be proven at trial, but not less than $3.5 million and/or rescission of the SAFE Notes investments along with attendant fees, costs and expenses, and such other and further relief as the Court may deem just and proper.

**Count II – For Violations of Section 10 of the Securities Exchange Act of 1934 and Rule 10-5(b)**
**(Against LifeVoxel, Kovey and Linh)**

121.  Plaintiffs repeat and reallege paragraphs 1 through 115 as paragraph 121 of this Complaint as though fully set forth herein

122.  Plaintiffs bring this cause of action against LifeVoxel, Kovey and Linh for violation of Section 10(b) of the Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder.

123.  LifeVoxel, Kovey and Linh made the various false and misleading statements specified above, which they knew or recklessly disregarded were misleading because they misrepresented or omitted material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading.

124.  LifeVoxel, Kovey and Linh violated Section 10(b) of the Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the Plaintiffs related to the SAFE Notes.

125.  As a direct and proximate result of the aforementioned wrongful conduct, Plaintiffs suffered damages in connection with the SAFE Notes. In reliance on LifeVoxel's, Kovey's and Linh's misstatements and omissions, Plaintiffs committed $3.5 million to the SAFE Notes. Plaintiffs would not have provided those funds if they had been aware of the misstatements and omissions made by LifeVoxel, Kovey and Linh. Plaintiffs did not know, and could not in the exercise of reasonable diligence have known, of LifeVoxel's, Kovey's and Linh's misrepresentations and omissions. These same misrepresentations and omissions caused Plaintiffs' losses.

126.  By virtue of the conduct alleged herein, LifeVoxel, Kovey and Linh have each violated Section 10(b) of the Act and Rule 10b-5 promulgated thereunder, and

are liable to Plaintiffs for damages in an amount to be determined at trial, but not less than $3.5 million.

WHEREFORE, Plaintiffs pray for an award in favor of Plaintiffs against Defendants, jointly and severally, in an amount to be proven at trial, but not less than $3.5 million and/or rescission of the SAFE Notes investments along with attendant fees, costs and expenses, and such other and further relief as the Court may deem just and proper.

## Count III – For Violations of Section 20(a) of the Securities Exchange Act of 1934
## (Against Kovey, Linh)

127.  Plaintiffs repeat and reallege paragraphs 1 through 126 as paragraph 127 of this Complaint as though fully set forth herein.

128.  Plaintiffs bring this cause of action against Kovey and Linh for violations of Section 20(a) of the Act, 15 U.S.C. § 78(a).

129.  In their positions as officers and directors of LifeVoxel, Kovey and Linh were controlling persons of the LifeVoxel within the meaning of Section 20(a) of the Act. By reason of their positions of control and authority as officers and/or directors of LifeVoxel, Kovey and Linh had the power and authority to cause LifeVoxel to engage in the conduct complained of herein. These Defendants were able to, and did, control, directly and indirectly, the decision-making of LifeVoxel, including the misstatements and omissions made by and on behalf of LifeVoxel.

130.  LifeVoxel committed violations of Section 10(b) of the Act.

1

2

3

131.  By reason of the foregoing, Kovey and Linh violated Section 20(a) of the

Act and are liable to Plaintiffs.

4

WHEREFORE, Plaintiffs pray for an award in favor of Plaintiffs against

5

Defendants, jointly and severally, in an amount to be proven at trial, but not less

6

7

than $3.5 million and/or rescission of the SAFE Notes investments along with

8

attendant fees, costs and expenses, and such other and further relief as the Court may

9

deem just and proper.

10

**Count IV – For Violation of the Virginia Securities Act (Blue Sky Laws)**
**Va. Code Ann. § 13.1-522**
**(Against LifeVoxel, Kovey, Linh)**

11

12

13

132.  Plaintiffs repeat and reallege paragraphs 1 through 126 as paragraph 132 of

14

15

this Complaint as though fully set forth herein.

16

133.  Upon information and belief, LifeVoxel, Kovey and Linh negotiated

17

significant portions of the SAFE Notes investment within, from and/or directed into

18

19

the State of Virginia, and executed the majority of the SAFE Notes in Virginia.

20

These Defendants were therefore subject to, and required to comply with, the

21

requirements of the Virginia Securities Act.

22

23

134.  Plaintiffs bring this cause of action under Section 13.1-522 of the Virginia

24

Code against LifeVoxel, Kovey and Linh. Plaintiffs are not required under this cause

25

of action to allege that these Defendants acted with scienter or fraudulent intent, as

26

27

these are not elements of a claim under Section 13.1-522.

28

135.  During discussions concerning the SAFE Notes, these Defendants made the false and materially misleading statements specified above, and omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading.

136.  These Defendants did not disclose the concealed information described above to the Plaintiffs. Rather, the Plaintiffs learned of this information months after providing their SAFE Note investments to these Defendants. Plaintiffs did not know, and could not in the exercise of reasonable diligence have known, of these Defendants' misrepresentations and omissions.

137.  But for these Defendants' misrepresentations and omissions, Plaintiffs would not have invested in the SAFE Notes. As a direct and proximate result of these Defendants' wrongful conduct, upon which Plaintiffs did rely, Plaintiffs have suffered damages in connection with the SAFE Notes.

138.  By virtue of the conduct alleged herein, these Defendants have each violated § 13.1-511 of the Virginia Code, and are liable to Plaintiffs for damages in an amount to be determined at trial, but not less than $3.5 million.  Plaintiffs are also entitled to rescission of the SAFE Notes, along with interest, expenses, fees, and costs associated with the investment and recovery thereon.

WHEREFORE, Plaintiffs pray for an award in favor of Plaintiffs against Defendants, jointly and severally, in an amount to be proven at trial, but not less than $3.5 million and/or rescission of the SAFE Notes investments along with

attendant fees, costs and expenses, and such other and further relief as the Court may deem just and proper.

**Count V – For Violation of the Virginia Securities Act (Blue Sky Laws)**
**Va. Code Ann. § 13.1-522(C)**
**(Against Kovey, Linh)**

139. Plaintiffs repeat and reallege paragraphs 1 through 126 as paragraph 139 of this Complaint as though fully set forth herein.

140. Plaintiffs bring this cause of action pursuant to Section 13.1-522(C) of the Virginia Code against Kovey and Linh. Plaintiffs are not required to allege that Kovey or Linh acted with scienter or fraudulent intent.

141. As directors, officers, and/or "persons" who directly or indirectly control LifeVoxel, Kovey and Linh are liable jointly and severally with and to the same extent as LifeVoxel under Section 13.1-522(C) of the Virginia Code.

142. By reason of their positions of control and authority as officers and/or directors of LifeVoxel, Kovey and Linh had the power and authority to cause LifeVoxel to engage in the conduct complained of herein. These Defendants were able to, and did, control, directly and indirectly, the decision-making of LifeVoxel, including the statements made to Plaintiffs.

143. Kovey and Linh, in their capacities as officers and/or directors of LifeVoxel, participated in and materially aided the misstatements and omissions set forth above. Kovey and Linh had direct supervisory involvement in the SAFE Notes and in procuring funds related thereto, and had the ability to influence and direct and did

influence and direct the activities of LifeVoxel in its violations of Section 13.1-522 of the Virginia Code.

144.  As set forth above, Kovey and Linh violated Section 13.1-522 of the Virginia Code. By virtue of their positions as controlling persons, officers and directors, and as a result of their aforesaid conduct and culpable participation, Kovey and Linh are liable pursuant to Section 13.1-522 of the Virginia Code, jointly and severally with, and to the same extent as LifeVoxel is to Plaintiffs.

145.  By reason of the foregoing, Kovey and Linh violated Section 13.1-522(C) and are liable to Plaintiffs.

WHEREFORE, Plaintiffs pray for an award in favor of Plaintiffs against Defendants, jointly and severally, in an amount to be proven at trial, but not less than $3.5 million and/or rescission of the SAFE Notes investments along with attendant fees, costs and expenses, and such other and further relief as the Court may deem just and proper.

### Count VI – Common Law Fraud/Fraud in the Inducement
### (LifeVoxel, Kovey)

146.  Plaintiffs repeat and reallege paragraphs 1 through 126 as paragraph 146 of this Complaint as though fully set forth herein.

147.  Plantiffs bring this cause of action against LifeVoxel, Kovey and Linh.

148.  Each of these Defendants made, authorized, or otherwise caused the misrepresentations or omissions at issue, which are summarized above.

149.  The misrepresentations and omissions set forth above were fraudulent and material.

150.  Each of these Defendants knew or recklessly disregarded that their representations and omissions were false and/or misleading at the time they were made, and each of these Defendants made the misleading statements with an intent to defraud Plaintiffs, as detailed above.

151.  These Defendants had reason to expect that Plaintiffs would rely on such misrepresentations and intended that their misleading statements and omissions would fraudulently induce Plaintiffs to invest $3.5 million in LifeVoxel via the SAFE Notes.

152.  Plaintiffs justifiably relied on Defendants' misrepresentations and omissions as detailed above. Plaintiffs did not know, and could not in the exercise of reasonable diligence have known, of these Defendants' misrepresentations and omissions.

153.  Had Plaintiffs known the facts regarding the SAFE Notes and LifeVoxel, they would not have invested in the SAFE Notes.

154.  As a direct and proximate result of these Defendants' false representations and omissions, Plaintiffs have suffered damages in an amount to be proven at trial, but not less than $3.5 million.

WHEREFORE, Plaintiffs pray for an award in favor of Plaintiffs against Defendants, jointly and severally, in an amount to be proven at trial, but not less

than $3.5 million and/or rescission of the SAFE Notes investments along with attendant fees, costs and expenses, and such other and further relief as the Court may deem just and proper.

## Count VII - Civil Conspiracy
### (Kovey, Linh)

155.  Plaintiffs repeat and reallege paragraphs 1 through 126 as paragraph 155 of this Complaint as though fully set forth herein.

156.  Prior to Mr. Puli's involvement with and financial scrutiny of LifeVoxel, Voxcell Cloud, and AI Visualize, Kovey and Linh misappropriated revenue from Voxcell Cloud to fund their lavish lifestyle.

157.  Kovey and Linh used Voxcell Cloud to pay the rent for their primary residence, the leases for their personal vehicles, gym memberships, and other personal expenses.

158.  Voxcell Cloud was not profitable enough to sustain and grow the lavish lifestyle desired by Kovey and Linh.

159.  When Kovey and Linh encountered Mr. Puli, they saw an opportunity and access to a new pool of money to use for their personal gain.

160.  Kovey and Linh had a meeting of the minds in that they agreed to utilize LifeVoxel, AI Visualize and Voxcell Cloud to create a scheme for obtaining money from Plaintiffs under false pretenses and moving the money through the three

business entities without proper documentation or oversight to use for their personal expenses and to increase their personal equity ownership.

161. Kovey and Linh violated federal and Virginia state securities laws to further their conspiracy.

162. Plaintiffs have suffered damages in an amount to be determined at trial but not less than $3.5 million as a result of Kovey and Linh's conspiracy to defraud Plaintiffs.

WHEREFORE, Plaintiffs pray for an award in favor of Plaintiffs against Defendants, jointly and severally, in an amount to be proven at trial, but not less than $3.5 million and/or rescission of the SAFE Notes investments along with attendant fees, costs and expenses, and such other and further relief as the Court may deem just and proper.

## VI.   JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Date:  April 22, 2022                                        Respectfully submitted,

/s/ Ethan J. Brown
Ethan J. Brown
ethan@bnsklaw.com
Amjad M. Khan
amjad@bnsklaw.com
**BROWN, NERI, SMITH &
KHAN LLP**
11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
T: (310) 593-9890
F: (310) 593-9980

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Jennifer L. Gordon
Jennifer L. Gordon
*jgordon@loriumlaw.com*
**LORIUM LAW**
180 N. LaSalle St., Suite 3700
Chicago, Illinois 60601
T: 312-564-5757
F: 312-564-5758

*Counsel for Plaintiffs*

COMPLAINT