# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFEVOXEL VIRGINIA SPV, LLC, A Virginia Limited Liability Company; SCOTT MARSCHALL, an individual; DEBBIE GALLO, an individual; KEVIN SINAGRA, an individual; and SCOTT POOLE, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>LIFEVOXEL.AI, INC., a Delaware Corporation; KOVEY KOVALAN, an individual; and LINH LE, an individual,<br><br>Defendants. | Case No.: 22-cv-566-GPC-JLB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE**<br><br>**[ECF Nos. 14, 15]** |

## INTRODUCTION

Before the Court is Defendant LifeVoxel.AI, Inc.; Kovey Kovalan; and Linh Le's (collectively "Defendants") Motion to Dismiss Plaintiff LifeVoxel Virginia SPV, LLC; Scott Marschall; Debbie Gallo; Kevin Sinagra; and Scott Poole's (collectively "Plaintiffs") Complaint and Defendants' Motion to Strike portions of the Plaintiffs' Complaint. ECF Nos. 14, 15. Defendants' Motion to Dismiss and Motion to Strike were

filed on June 27, 2022. The Court provided a briefing schedule in which Plaintiffs' opposition was due by August 5, 2022. ECF No. 16. However, Plaintiffs failed to file an opposition or statement of non-opposition to the instant Motions. The motion hearing set for August 26, 2022 is hereby **VACATED**. For the following reasons, the Court **GRANTS** the Defendants' Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Complaint. The Court **DENIES** the Defendants' Motion to Strike as moot.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiffs' Complaint and are accepted as true for the purpose of resolving the instant Motions.

Defendants Kovey Kovalan ("Kovalan") and Linh Le ("Le") are owners and officers of Defendant LifeVoxel.AI, Inc. ("LifeVoxel"). ECF No. 1 ¶ 2. Plaintiffs allege Kovalan and Le fraudulently induced Plaintiffs to invest $3.5 million in LifeVoxel through Simple Agreements for Future Equity ("SAFE Notes").[1] ECF No. 1 ¶ 2. Specifically, Plaintiffs filed a Complaint on April 22, 2022 alleging Defendants: (1) violated Section 12(a)(1) of the Securities Exchange Act of 1933 ("the 1933 Act"); (2) committed securities fraud in violation of Sections 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act") and SEC Rule 10(b)-5 ("Rule 10(b)-5); (3) violated Section 20

---

[1] SAFE Notes are a type of security which allow investors to contribute capital to a business entity that will convert into equity upon the occurrence of a future "conversion" event specified in the SAFE Note. ECF No. 1 ¶¶ 7, 8. SAFE Notes are classified as securities by the United States Securities and Exchange Commission ("the SEC"). ECF No. 1 ¶ 11.

of the Securities Exchange Act; (4) violated the Virginia Securities Act, Va. Code. Ann. § 13.1-522; (5) violated the Virginia Securities Act, Va. Code. Ann. § 13.1-522(C); (6) committed common law fraud; and (7) engaged in civil conspiracy. ECF No. 1 ¶ 2.

While Kovalan and Le's business history is indeed "convoluted" as pled, (ECF No. 1 ¶ 32), Plaintiffs essentially allege the following: Kovalan owns a number of patents relating to medical records technology. ECF No. 1 ¶ 31. In 2007, company Voxcell Cloud was organized in Connecticut. ECF No. 1 ¶ 36. In 2016, company AI Visualize was incorporated in Texas and several of the patents were assigned to it. ECF No. 1 ¶¶ 37, 38. Voxcell Cloud then became a wholly owned subsidiary of AI Visualize. ECF No. 1 ¶ 41. In 2019, Voxcell Cloud filed an application to operate under the assumed business name of "LifeVoxel.AI" (later to become Defendant LifeVoxel). ECF No. 1 ¶ 43. AI Visualize then licensed the patents to Voxcell Cloud. ECF No. 1 ¶¶ 44, 45. In 2019, LifeVoxel was incorporated as a wholly owned subsidiary of AI Visualize. ECF No. 1 ¶ 46.

In July 2021, Kovalan met entrepreneur and investor Mr. Sekhar Puli ("Puli") who took on various roles in both AI Visualize and LifeVoxel. ECF No. 1 ¶¶ 50, 53, 56. After Puli began employment at AI Visualize, a Restructuring Plan ("Plan") was put into effect that would: (1) separate LifeVoxel from being used as Voxcell Cloud's assumed business name; (2) assign contracts and business activity from Voxcell Cloud to LifeVoxel; (3) allow AI Visualize to retain ownership of the patents and license use to LifeVoxel; (4) buyback shares from AI Visualize's then-current shareholders; and (5) raise capital for LifeVoxel. ECF No. 1 ¶ 58. After the Plan was completed, Voxcell Cloud was to cease operations and all further business was to be completed by LifeVoxel. ECF No. 1 ¶ 60.

Plaintiffs allege that despite the Plan agreement, Kovalan and Le did not transfer all assets from Voxcell Cloud to LifeVoxel and instead Voxcell Cloud continued sending invoices and collecting funds due to LifeVoxel. ECF No. 1 ¶¶ 64, 95. Plaintiffs allege

that revenue rightfully due to LifeVoxel for services performed was invoiced by Kovalan and Le from Voxcell Cloud for the purpose of funding their "luxury lifestyle" and paying themselves and their friends "exorbitant salaries." ECF No. 1 ¶¶ 66, 91.

LifeVoxel solicited funds from Plaintiffs, four individuals alleged to be friends and family of Puli. ECF No. 1 ¶¶ 67-69. Plaintiffs allege that in the course of soliciting capital from Plaintiffs, Defendants provided false and misleading statements as well as omissions as to LifeVoxel's finances and failed to disclose critical information relevant to Plaintiffs' decision to invest. ECF No. ¶ 70.

Specifically, Plaintiffs allege the following misrepresentations and omissions: (1) during a meeting with Plaintiffs, Kovalan did not disclose that invested funds would be used to buy back shares of AI Visualize from those investors; (2) LifeVoxel emailed a presentation to Plaintiffs containing three years of LifeVoxel financial statements alleged to be "completely fabricated," as LifeVoxel was a shell company conducting no business; (3) the SAFE Notes sent to Plaintiffs contained inaccurate capitalization tables that showed AI Visualize as 100% owner of LifeVoxel, when in fact a third party, UKSA, LLC, was an equity owner of LifeVoxel; and (4) the SAFE Notes sent to Plaintiffs inaccurately stated that LifeVoxel was in good standing under Delaware law, when in fact LifeVoxel was not in good standing. ECF No. 1 ¶¶ 71-88.

Plaintiffs seek return of their investment funds and related costs, fees, and expenses. ECF No. 1 ¶ 6.

## LEGAL STANDARD

### I.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff is not required to provide "detailed factual allegations," but the plaintiff must plead sufficient facts that, if accepted as true, "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint will survive a motion to dismiss when it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct charged." *Iqbal*, 556 U.S. at 678. The Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## II. Federal Rule of Civil Procedure 9(b) and PSLRA

Claims under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10(b)-5 must also meet the pleading requirements of both Rule 9(b) and the Private Securities Litigation Reform Act ("the PSLRA"). *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

Under Rule 9(b), when the complaint includes allegation of fraud, a party must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

The PSLRA further requires Plaintiff to state with particularity the facts of the alleged violation as well as scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2008). Specifically, the PSLRA requires the complaint to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). If an allegation regarding the statement or omission is made on information and belief, Plaintiff must state with particularity all facts on which the belief is formed. 15 U.S.C. § 78u-4(b)(1).


5

22-cv-566-GPC-JLB

As to scienter, to survive a motion to dismiss under the PSLRA, a complaint shall "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The *Tellabs* Court stated that to determine whether an inference is "strong," courts must take into account "plausible, nonculpable inferences" for the Defendant's conduct. *Tellabs*, 551 U.S. at 323. A court must compare the "malicious and innocent inferences" permissible from the facts alleged, and a complaint will survive a motion to dismiss only if the "malicious inference is at least as compelling as any opposing innocent inference." *Zucco*, 552 F.3d at 991. A court should conduct a "holistic" review of the allegations to determine if the allegations combined allow a strong inference of intentional conduct or deliberate recklessness. *Zucco*, 552 F.3d at 992.

### III. Local Rule 7.1.f.3

Last, Local Rule 7.1.f.3.c states that "[i]f an opposing party fails to file the papers in the manner required [by the Local Rules], that failure may constitute a consent to the granting of a motion." Local Rule 7.1.e.2 states that opposing motions must be filed no later than fourteen calendar days prior to the noticed hearing. Here, the Defendants filed the Motion to Dismiss on June 27, 2022. ECF No. 14. Plaintiffs' counsel was given notice that the hearing would be held August 26, 2022, with their opposition due August 5, 2022. ECF No. 16. Plaintiffs failed to file any sort of response. While the Court is permitted to take this lack of response as consent, the Court nevertheless finds the Motion to Dismiss should be granted for the reasons stated below.

## DISCUSSION

### I. Count I

Plaintiffs first allege a violation of Section 12(a)(1) of the Securities Act of 1933. Section 12(a)(1) of the 1933 Act prohibits the sale of unregistered securities. 15 U.S.C. §

77(*l*)(a)(1). However, not all securities must be registered prior to sale. Section 4(a)(2) of the 1933 Act states that the registration requirement does not apply to "transactions by an issuer not involving any public offering." Regulation D states the requirements for exemption from the registration requirement. 17 C.F.R. §§ 230.500-230.508. For example, the offeror cannot engage in general solicitation; unaccredited investors must have the necessary experience to evaluate the investment risks; and if unaccredited investors purchase stock, the issuer has certain disclosure obligations. 17 C.F.R. § 230.502(c); 17 C.F.R. § 230.506(b)(2)(ii); and 17 C.F.R. § 230.502(b)(1)-(2). The issuer must demonstrate that it qualifies for the registration exemption. *See SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953).

Here, the Plaintiffs' Complaint states all plaintiffs are within Puli's "social and familial network." ECF No. 1 ¶ 67. As such, Defendants' Motion to Dismiss argues that this was a private offering to accredited investors. ECF No. 14. The SAFE Notes themselves required the investor to be accredited and clearly stated the securities were not registered. ECF No. 14; ECF No. 1, Exhibit C. Due to the lack of briefing on this question and Plaintiffs' failure to oppose Defendants' argument these securities met the registration exemption requirements, the court finds Defendants have met their burden to show this was a private sale to accredited investors and is exempt from registration. Thus, Count I must be dismissed for failing to state a claim on which relief can be granted.

## II.    Count II

Plaintiffs next allege violations of Section 10(b) of the 1934 Act and Rule 10(b)-5. Section 10(b) makes it unlawful for "any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or . . . for the protection of investors." 15 U.S.C. § 78(j)(b). "SEC Rule 10(b)-5 implements this provision by making

it unlawful to, among other things, 'make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011) (quoting 17 C.F.R. § 240.10b-5(b)).

To state a claim under § 10(b) of the 1934 Act and Rule 10(b)-5, Plaintiff must allege: (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) reliance by plaintiff on the misrepresentation or omission; (5) economic loss; and (6) a causal nexus between the misrepresentation or omission and the loss, i.e., loss causation. *Matrixx*, 563 U.S. at 37-38. To establish liability under § 10(b) and Rule 10b-5, a Plaintiff must prove that the Defendant acted with "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319.

Plaintiffs fail to meet the burden imposed by Rule 9(b) and the PSLRA to plead a claim for relief under § 10(b) of the 1934 Act and Rule 10(b)-5. Plaintiffs have failed to adequately plead fraudulent misrepresentation and omission under Rule 9(b) and the PSLRA; scienter under the PSLRA; and economic loss and loss causation. Thus, Count II is dismissed for the reasons below.

*a. Statements*

The PSLRA requires Plaintiffs to specify each statement or omission alleged to have been misleading and the reasons why such statement or omission is misleading. 15 U.S.C. § 78u-4(b)(1)(B). Rule 9(b) requires "[a]verments of fraud [t]o be accompanied by 'the who, what, when, where, and how' of the misconduct charged.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Plaintiffs allege the following as misleading: First, Defendants' failure to disclose that SAFE Note funds would be used to buyback shares from AI Visualize investors.

ECF No. 1 ¶ 71. Second, a presentation emailed to Plaintiffs with three years of LifeVoxel financial statements showed increasing revenue, when in fact LifeVoxel was a shell company conducting no business. ECF No. 1 ¶ 77. Third, the capitalization table included with the SAFE Notes was false because it represented AI Visualize as 100% equity owner of LifeVoxel, when in fact a third-party entity owned shares in LifeVoxel and a verbal promise had been made to a third party independent contractor to give them equity in LifeVoxel in the future. ECF No. 1 ¶¶ 78, 86, 90. Fourth, the SAFE Notes falsely stated LifeVoxel was in good standing with the Delaware Secretary of State, when in fact LifeVoxel had not filed its annual report since March 2020 and had an outstanding tax obligation. ECF No. 1 ¶¶ 83-84. Each of these statements and omissions fail to meet the pleading requirements imposed by Rule 9(b) and the PSLRA.

Defendants' failure to disclose that funds would be used to repurchase shares from AI Visualize investors is not misleading because Defendants were under no duty to disclose exactly how the funds would be used. "Silence, absent a duty to disclose, is not misleading under Rule 10(b)-5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n. 17 (1988). The securities fraud provisions "do not create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary 'to make . . . statements made, in light of the circumstances under which they were made, not misleading.'" *Matrixx*, 563 U.S. at 44-45 (quoting 17 C.F.R. § 240.10(b)-5(b)). Plaintiffs do not plead facts showing that disclosure of this fact was necessary in light of other representations made by Defendants. Plaintiffs do not plead facts that Defendants made any representations as to how funds would be used. Further, the Restructuring Plan developed by Defendants and Puli included the intention that funds would be used to buy back shares from AI Visualize investors. ECF No. 1 ¶ 58(d). Plaintiffs were family and friends of Puli, and it is likely they were aware of this intention, or that Defendants

thought Plaintiffs were aware of this intention, obviating the need to disclose how funds would be used.

The allegation the presentation emailed to Plaintiffs was misleading does not meet the heightened standard of Rule 9(b) or the PSLRA because it does not adequately allege facts showing the "who, what, when, where, and how" of the alleged fraud. *Kearns*, 567 F.3d at 1124. Plaintiffs' Complaint simply states that the presentation showed "increasing revenue for the prior three years," and that this must have been fabricated because LifeVoxel was a shell company conducting no business. ECF No. 1 ¶ 77. This is not enough to meet the heightened pleading standards in this context. Plaintiffs have not specifically identified who sent the email (simply, "LifeVoxel, at Kovey's direction," ECF No. 1 ¶ 72); who prepared the contents of the email; or what exactly the presentation contained, including any other relevant context. The presentation was not included as an exhibit in Plaintiffs' Complaint. This fails the Rule 9(b) and PSLRA threshold.

The allegation the "cap table" was fraudulent to the extent it misrepresented AI Visualize as 100% equity owner of LifeVoxel fails for similar reasons. Plaintiffs simply allege that the cap table "was presented to Plaintiffs." ECF No. 1 ¶ 78. The Complaint does not state who presented the cap table, what context the cap table was presented in, or who prepared the cap table. This fails the particularity requirement.

The allegation the SAFE Notes presented inaccurate information as to LifeVoxel's standing under Delaware law is discussed below. Plaintiffs have not adequately plead scienter with regard to this statement.

   b. *Scienter*

To establish liability under § 10(b) and Rule 10b-5, a Plaintiff must prove that the Defendant acted with "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319. Under the PSLRA, a complaint shall "state with particularity facts giving rise to a strong inference that the defendant acted with the

10

required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). To determine if an inference is "strong," courts must take into account "plausible, nonculpable inferences" for the Defendant's conduct. *Tellabs*, 551 U.S. at 323. A complaint will survive a motion to dismiss only if the "malicious inference is at least as compelling as any opposing innocent inference." *Zucco*, 552 F.3d at 991.

Plaintiffs allege that Defendants acted "intentionally" to induce Plaintiffs to invest capital. ECF No. ¶ 70. The court is not required to accept this as true, as this is a legal conclusion. Further, Plaintiffs must show more than intention. Plaintiffs must show intent to deceive, manipulate, or defraud. *Tellabs*, 551 U.S. at 319. Plaintiffs have failed to meet their burden under the PSLRA.

Plaintiffs fail to plead any facts showing that Defendants knew the financial statements were false or that they intended to deceive Plaintiffs via the inaccurate statements. In addition, there is a strong competing inference here that the financial statements were actually not inaccurate. The statements showed increasing revenue for LifeVoxel for the past three years. Part of the Restructuring Plan was that Voxcell Cloud would assign all contracts and business activity to LifeVoxel. ECF No. 1 ¶¶ 48, 57, 58(a). It is not clear when the statements were presented to Plaintiffs, but it is likely LifeVoxel was not a shell company at the time the SAFE notes were issued (LifeVoxel began operating in 2021 pursuant to the Restructuring Plan), and thus LifeVoxel's financial statements would include information from Voxcell Cloud.

There is a similar issue in regard to LifeVoxel's standing under Delaware law. Plaintiffs have pled no facts that Defendants were even aware they were not in good standing under Delaware law. Further, the public availability of this information makes it difficult to draw the inference that Defendants intended to deceive. Defendants were likely well aware Plaintiffs could obtain this information with an online search. *See also* ECF No. 14.

"Facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness." *In re VeriFone Holdings, Inc. v. Secs. Litig.*, 704 F.3d 694, 700 (2012). Plaintiffs have pled "motive and opportunity," (ECF No. 1 ¶ 112), but this is not enough. To satisfy the pleading standard, Plaintiffs must plead sufficient facts to allow a "strong inference" Defendants acted with intent to deceive. Plaintiffs have not met this burden. Their Complaint pleads the alleged misstatements and omissions above, as well as the allegation that they used Plaintiffs' funds to finance their "luxury lifestyle" and pay "exorbitant salaries" to themselves and their friends. ECF No. 1 ¶¶ 66, 91. False statements, including false financial reports, are not per se enough to create a strong inference of scienter. *See In re VeriFone*, 704 F.3d at 701. Further, Plaintiffs' allegations that Defendants acted "intentionally" and "knowingly" in their failure to comply with the Restructuring Plan are legal conclusions the court is not required to accept. ECF No. 1 ¶¶ 93-95.

In conclusion, Plaintiffs have not pled facts sufficient to create a "strong inference" Defendants acted with scienter under the PSLRA.

  c. *Economic loss and loss causation*

"Loss causation" requires a Plaintiff to prove that the Defendants' act or omission caused the loss for which Plaintiff seeks to recover. 15 U.S.C. § 78(u)-4(b)(4). Rule 9(b) requires that the Plaintiffs' Complaint contain "sufficient detail to (1) give the defendant ample notice of [the Plaintiff's] loss causation theory and (2) provide the court some assurance that the theory has a basis in fact." *In re Gilead*, 536 F.3d at 1056.

Here, Plaintiffs allege they invested a combined $3.5 million dollars via SAFE Notes they would not have but for Defendants' fraudulent behavior. ECF No. 1 ¶¶ 114-15. However, this is not enough to prove economic loss. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) is instructive. In *Dura*, the Supreme Court stated that an

inflated purchase price because of misrepresentation is not enough to satisfy economic loss, because at the time the transaction took place, any inflated purchase payment is offset by ownership of a share that, at that instant, possesses equivalent value. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). As a result, Plaintiff has not suffered any economic loss. *Id.*

In the instant case, Plaintiffs have not pled any facts to show that the value of their SAFE Notes has been reduced. Upon the occurrence of the conversion event specified in the SAFE Note, Plaintiffs' investment will convert into equity. Plaintiffs allege that Defendants' actions have made it "more difficult" for the conversion event to occur, ECF No. 1 ¶ 66; however, there is no allegation Defendants have made such conversion event *impossible*. Thus, Plaintiffs have failed to allege any facts showing they have suffered economic loss.

### III. Count III

Plaintiffs allege a violation of Section 20(a) of the 1934 Act. Section 20(a) makes liable any person who directly or indirectly controlled a person that violated the 1934 Act. Section 20(a) requires an underlying violation of the 1934 Act. *In re Rigel Pharms., Inc. Secs. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012). For the reasons stated above, Plaintiffs have failed to adequately plead a right to relief under Section 10(b) of the 1934 Act and Rule 10(b)-5. As such, this Count is dismissed.

### IV. Counts IV and V

Given their like object and purpose, the Virginia Supreme Court similarly construes the Virginia Securities Act as the federal 1933 and 1934 Acts. *See Andrews v. Browne*, 276 Va. 141, 147-48 (Va. 2008); *see also Dunn v. Borta*, 369 F.3d 421, 429 n.17 (4th Cir. 2004). While Counts IV and V are not subject to PSLRA, they are subject to Rule 9(b). Thus, for the reasons stated above, these counts are similarly dismissed.

### V. Count VI

To establish common law fraud under Delaware law, a Plaintiff must prove: (1) a false representation made by the defendant; (2) defendant's knowledge that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction was taken in justifiable reliance on the misrepresentation; and (5) damage to the plaintiff as a result of the misrepresentation. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1047 (Del. 1983).

Although common law fraud is not subject to the PSLRA pleading requirements, it is clearly subject to Rule 9(b) particularity requirements. For the reasons stated above, Plaintiffs fail to meet this standard. Further, as stated above, it is unclear if Plaintiffs have suffered any damage, an essential element of the common law fraud claim. Plaintiffs do not provide facts showing that their investment has declined in value. Thus, Count VI is dismissed.

## VI. Count VII

Under California and Delaware law, civil conspiracy is not an independent cause of action and must be predicated on an underlying wrong. *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 74 (D. Del. 2002). Thus, to survive a Motion to Dismiss Count VII, Plaintiffs must sufficiently plead the elements of the underlying fraud. For the reasons stated above, Plaintiffs have failed to meet their burden, and therefore Count VII must be dismissed.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that the Defendants' Motion to Dismiss is **GRANTED**. Defendants' Motion to Strike is **DENIED** as moot. Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE**, and the hearing currently set for August 26, 2022 is **VACATED**.

**IT IS SO ORDERED.**

Dated: August 23, 2022

Hon. Gonzalo P. Curiel
United States District Judge